# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of PENN AIR CONTROL INC., a California Corporation,<br><br>                              Plaintiff,<br>   v.<br>BILBRO CONSTRUCTION COMPANY, INC., a California corporation, and INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation,<br><br>                              Defendant. | CASE NO. 16cv0003-WQH-NLS<br><br>ORDER |
| BILBRO CONSTRUCTION COMPANY, INC., a California corporation<br><br>                 Counterclaim Plaintiff,<br>   v.<br>PENN AIR CONTROL INC., a California Corporation, and ALPHA MECHANICAL, INC., a California corporation,<br><br>              Counterclaim Defendants, | |

| | |
|---|---|
| ALPHA MECHANICAL, INC., a California corporation | |
| Counterclaim Plaintiff, | |
| v. | |
| BILBRO CONSTRUCTION COMPANY, INC., a California corporation; FERGUSON PAPE BALDWIN ARCHITECTS, INC., a California corporation; SPARLING, INC., a Washington corporation; SHADPOUR CONSULTING ENGINEERS, INC., a California corporation and DOES 1 through 10, | |
| Counterclaim Defendants, | |

HAYES, Judge:

The matters before the Court are the Motions to Dismiss filed by Counterclaim Defendants Ferguson Pape Baldwin Architects, Inc. (ECF No. 56) and Sparling Inc. (ECF No. 59).

**I. Procedural Background**

On July 17, 2015, Penn Air Control, Inc. ("Penn Air") initiated this action by filing a complaint against Bilbro Construction Company, Inc. ("Bilbro") and International Fidelity Insurance Company ("Fidelity") alleging: (1) breach of contract; (2) quantum meruit; (3) imposition of statutory penalties; and (4) recovery under Miller Act Payment bond. (ECF No. 1). Penn Air seeks damages incurred from nonpayment for serviced performed during the renovation of the Watkins Hall, Building 245, Naval Support Activity Monterey, California ("the Project").

On October 19, 2015, Bilbro filed a counterclaim against Penn Air and Alpha Mechanical, Inc. ("Alpha"). (ECF No. 17). Bilbro alleges claims for breach of contract and declaratory relief against both Alpha and Penn Air and seeks damages as a result of the failure to achieve noise levels that complied with the noise level limits for the Project. Bilbro alleges additional claims against Alpha including: (1) full indemnity; (2) partial indemnity; and (3) unjust enrichment.

On January 19, 2016, Alpha filed a counterclaim against Bilbro, Ferguson Pape

Baldwin Architects ("FPBA"), Sparling, Inc. ("Sparling"), and Shadpour Consulting Engineers ("SC Engineers"). (ECF No. 45). Alpha's counterclaim includes causes of action for (1) breach of contract against Bilbro; (2) breach of fiduciary duty against Bilbro; (3) negligence against Bilbro, FPBA, and Sparling; (3) full indemnity against SC Engineers; and (5) partial indemnity against SC Engineers.

On February 12, 2016, FPBA filed a motion to dismiss Alpha's negligence counterclaim. (ECF No. 56). This is the only claim alleged by Alpha against FPBA. On March 1, 2016, Alpha filed an opposition. (ECF No. 68). On March 7, 2016, FPBA filed a reply. (ECF No. 71). On March 7, 2016, FPBA filed a request for oral argument. (ECF No. 72).

On February 12, 2016, Sparling filed a motion to dismiss Alpha's negligence counterclaim. (ECF No. 59). This is the only claim alleged by Alpha against Sparling. On March 7, 2016, Alpha filed an opposition. (ECF No. 73). On March 14, 2016, Sparling filed a reply. (ECF No. 75).

On June 2, 2016, the Court held oral argument on the Motions to Dismiss. (ECF No. 89).

**II. Allegations in Alpha's Counterclaim (ECF No. 45)**

On April 20, 2012, the Department of the Navy, Navy Facility Engineering Command Southwest, (the "Navy") awarded Bilbro with the prime contract for the renovation of the Watkins Hall, Building 245, Naval Support Activity Monterey, California for the amount of $7,321,712.00 ("the Project"). (ECF No. 45 ¶ 10). As the Prime Contractor, Bilbro "contracted with FPBA to provide architectural design services for the Project, designating FPBA as the Designer of Record for the Project." *Id*. ¶ 12. "FPBA contracted with Sparling, whereby Sparling, as an acoustical consultant, was to provide guidance and review of acoustical issues on the Project." *Id*. ¶ 13. Bilbro also entered into a "written subcontract with Alpha designating Alpha as a subcontractor on the Project . . . ." *Id*. ¶ 14. Alpha cosigned a performance bond and a payment bond with Bilbro. *Id*. ¶ 16.

"Under the design quality control plan Alpha was to submit its design-build plans to FPBA, the Designer of Record, and Bilbro, the Prime Contractor, for review and approvals." *Id*. ¶ 17. "Subsequently, Bilbro would submit the final proposal to the Navy for approval." *Id*.

"Alpha entered into a written agreement with SC Engineers, a consulting engineering firm, to design the mechanical system for the Project in accordance with the terms and conditions of their agreement . . . ." *Id*. ¶ 18.

"The design-build submittal and review was divided into stages of 35%, 75% and 100% design completions." *Id*. ¶ 19. "With every stage, Alpha would submit the proposed plans to Bilbro and would receive commentary, changes and revisions from Bilbro, FPBA and Sparling." *Id*.

"On or about October 30, 2012, Sparling conducted an onsite review of the plans and designs and noted a potential issue with noise levels in eight rooms." *Id*. ¶ 20. "The anticipated noise was attributed to fan noise and air handling units in the proposed HVAC system." *Id*.

"From October 30, 2012 to April 3, 2013, Sparling, FPBA and Bilbro discussed this concern with Alpha and SC Engineers and proposed several recommendations to address the anticipated noise issue in these 8 isolated rooms with Alpha implementing their recommendations." *Id*. ¶ 21. "Although Alpha had its subcontract with Bilbro, Alpha regularly received communications from Sparling and FPBA either directly from Sparling and FPBA or as a forward by Bilbro." *Id*.

"On April 3, 2013, Bilbro notified Alpha that it received the 100% design approval and was ready to proceed with construction." *Id*. ¶ 22. "The communications between FPBA, Bilbro, Sparling, SC Engineers and Alpha continued, with Sparling suggesting several mitigation techniques and FPBA providing drawings of possible enclosures of air handling units to lower the potential noise level." *Id*. ¶ 23. These communications were sent directly to Alpha or forwarded to Alpha by Bilbro. *Id*. Alpha "commenced the performance of its services pursuant to the approved drawings

and under the Alpha Subcontract." *Id.* ¶ 24.

After Alpha completed its work, "the Navy noted that 23 of the rooms in the Watkins Hall exceeded Navy's noise level requirements." *Id.* ¶ 26. "None of the 23 rooms were noted as a potential problem by Bilbro, FPBA and Sparling during their review, revision and subsequent approvals of Alpha's proposed designs and equipment." *Id.* "[T]he 8 rooms initially noted as a potential problem did not exceed the required noise level threshold and were not included in the list of the 23 rooms noted by the Navy." *Id.*

"To address the exceeding noise levels, Bilbro, FPBA and Sparling provided Alpha with various suggestions . . . on how to reduce the noise levels in the individual rooms." *Id.* ¶ 27. As a result, "Alpha had to purchase new equipment, remove prior installations, install new materials, purchase additional supplies and to remobilize its crew at least on four separate occasions during the period of August 2014 through May 2015." *Id.* The solutions did not effectively reduce the noise levels and the Navy refused to accept the Project. *Id.* ¶ 28.

"[I]n April of 2015 Alpha engaged its own acoustical experts and presented Bilbro with the suggested solution for the remaining rooms with elevated noise levels." *Id.* ¶ 29. "Instead of implementing Alpha's proposed plan, on May 22, 2015 Bilbro terminated Alpha's Subcontract and withheld $323,352.00 still owing to Alpha." *Id.* ¶ 30. "Having its subcontract terminated, Alpha was precluded from access to the Project and the ability to implement its proposed changes." *Id.* ¶ 31.

"Despite being precluded from the Project, Alpha remained a cosigner on the performance bond and payment bond for the Project." *Id.* ¶ 32. "Alpha requested Bilbro to update Alpha on the progress of the Project and payments to all other subcontractors, but Bilbro refused." *Id.* "As a result of Bilbro's refusal, Alpha was and continues to incur damages of having to address demands by other subcontractors against the payment bond." *Id.*

Alpha alleges that FPBA and Sparling were negligent by, "among other things,

failing to meet the applicable standard of care due in performing their professional services, failing to properly inspect the designs on the Project prior to their approvals, failing to detect problems with the designs prior to the completion of the work, failing to retain properly-trained professionals, failing to effectively manage the job site and various subcontractors, failing to provide proper and effective solutions to address the elevated noise levels, and negligently performing services as described above." Alpha seeks damages in the amount of approximately $1,121,564.57 for costs incurred due to additional labor performed and materials supplied for the Project. *Id.* ¶ 50.

## III. Legal Standards

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must

1  accept as true all of the allegations contained in a complaint is inapplicable to legal
2  conclusions. Threadbare recitals of the elements of a cause of action, supported by
3  mere conclusory statements, do not suffice." *Id.* (citation omitted). "When there are
4  well-pleaded factual allegations, a court should assume their veracity and then
5  determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In
6  sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content,
7  and reasonable inferences from that content, must be plausibly suggestive of a claim
8  entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.
9  2009) (quotations and citation omitted).

**B. Negligence**

Under California law, to establish a claim for negligence a plaintiff must plead (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). In this motion, the first element, duty, is at issue.

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily v. Arthur Young & Co.*, 834 P.2d 745, 760 (Cal. 1992). A duty of care may arise through statute, contract, the general character of the activity in which the defendant engaged, or the relationship between the parties. *J'Aire Corp. v. Gregory*, 598 P.2d 60, 61 (Cal. 1979). "Courts are reluctant to impose duties to prevent economic harm to third parties because '[a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence and contracting power, as well as other information tools.'" *The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 106 Cal. Rptr. 2d 1, 8 (Ct. App. 2001) (citing *Bily*, 834 P.2d at 765). However, "[c]ourts sometimes impose a duty to prevent pure economic loss when there is no privity of contract when the injured party is an intended beneficiary of a contract between the defendant and another party." *Id.*

In this case, there is no contractual privity or applicable statute, therefore Alpha must allege facts which establish the existence of a "special relationship" giving rise to

a legal duty of care. *See id.* To assess whether there is a "special relationship" in the absence of privity of contract, California courts balance six factors: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *See Biakanja v. Irving*, 320 P.2d 16, 19 (1958).

**IV. Discussion**

**A. Motion to Dismiss Filed by FPBA (ECF No. 56)**

FPBA contends that Alpha cannot state a claim for negligence because Alpha cannot establish that FPBA owes Alpha a duty of care. (ECF No. 56-1). FPBA contends that FPBA and Alpha "are not in contractual privity, and there are no facts pled establishing a 'special relationship' between FPBA and Alpha." *Id.* at 4.

Alpha contends that FPBA owed Alpha a duty of care because there was a "special relationship" between FPBA and Alpha giving rise to a legal duty of care. (ECF No. 68). Alpha contends that the "contract entered into by Alpha and Bilbro, specifically stated that Alpha's work was to be done based on plans and specifications of FPBA." *Id.* at 17. Alpha contends that "FPBA created, reviewed, changed, approved and commented on the design-built plans implemented by Alpha . . . ." *Id.* Alpha contends that there are "no claims that Alpha deviated from the plans and specifications created and approved by FPBA . . . ." *Id.* at 9.

In *State Ready Mix, Inc. v. Moffatt & Nichol*, 181 Cal. Rptr. 3d 921 (Ct. App. 2015), Bellingham Marine, Inc., a marine project manager, hired Major Engineering Marine, Inc. ("Major"), to construct a pier. Bellingham hired Moffatt & Nichol ("Moffatt"), a civil engineering firm, to prepare the plans for the pier. Major hired State Ready Mix, Inc. to supply the concrete. State Ready Mix submitted the concrete mix design to Major and, at the request of Major, Moffatt reviewed and approved of the concrete mix design although it was not part of Moffatt's job duties. It was later

determined that the concrete supplied was defective and the concrete had to be removed and replaced. After investigation, State Ready Mix reported that its equipment had experienced a mechanical failure and that State Ready Mix had made a mistake when it manually mixed the concrete. No facts alleged that Moffatt knew or should have known that State deviated from the approved mix design.

Major sued State Ready Mix for the cost of the repairs and State Ready Mix countersued Moffatt for equitable indemnity and contribution. The trial court sustained Moffatt's demurrer without leave to amend. On appeal, the court of appeals affirmed. Applying the *Biakanja* factors, the court determined that "[t]he *Biakanja* argument fails on every factor." *Id*. at 926. The courted noted that Moffatt's review of the concrete was a "gratuitous" service and intended to benefit Bellingham, the project manager. *Id*. at 927. The Court noted that "[a]ll the contractual duties allegedly assumed by Moffatt were intended to benefit Bellingham, not State or Major." *Id.* The Court noted that Moffatt's review of the concrete mix design "was not the cause of the bad concrete," rather, State Ready's deviation from the approved mix caused the concrete to fail the project specifications. *Id*.

In this case, under the first *Biakanja* factor, Alpha alleges that the contractual scope of Alpha's work on the Project was specifically defined as "Design/Build Mechanical, Plumbing, Electrical plus Overall Project Superintendence from plans and specifications by FPBA . . . ." (ECF No. 45 ¶ 14). Alpha alleges that FPBA was to review, revise, and approve all of Alpha's suggestions and recommendation on the Project and that Alpha was to implement FPBA's decisions. Unlike in *State Ready Mix*, in this case there are no facts alleged that Alpha deviated from the plans and specifications created and approved by FPBA. *See State Ready Mix*, 181 Cal. Rptr. 3d at 927 ("State deviated from the approved mix design."). Alpha could not have performed its contract with Bilbro without utilizing the plans that FPBA reviewed. Thus, FPBA's performance was intended to affect Alpha. This factor weighs in favor of imposing a duty of care.

The second *Biakanja* factor, foreseeability of harm, is present. Alpha alleges that "Alpha was to submit its design-build plans to FPBA, the Designer of Record, and Bilbro, the Prime Contractor, for review and approvals." (ECF No. 45 ¶ 17). Alpha alleges that it discussed the potential noise issues with FPBA, Sparling, and Bilbro, and that they "proposed several recommendations to address the anticipated noise issue . . . . with Alpha implementing their recommendations." *Id*. ¶ 21. Alpha alleges that "FPBA provid[ed] drawings of possible enclosures of air handling units to lower the potential noise levels" and that these communications "were sent directly to Alpha or forward to Alpha by Bilbro." *Id*. ¶ 23. It was foreseeable that any negligence in the recommendations and drawings modified by FPBA would adversely affect Alpha, which was contractually obligated to use FPBA's plans.

The third and fourth *Biakanja* factor, certainty of injury and the closeness of the connection between FPBA's conduct and the injury suffered, weigh in favor of imposing a duty of care. Alpha alleges that it submitted all its plans to Bilbro and received "commentary, changes and revisions from Bilbro, FPBA and Sparling." (ECF No. 45 ¶ 19). Alpha alleges that FPBA "proposed several recommendations to address the anticipated noise issue" and that Alpha "implement[ed] their recommendations." *Id*. ¶ 21. Alpha alleges that FPBA noted potential issues in the drawings, but did not note 23 rooms which exceeded the noise level requirement thereby contributing to Alpha's damages. Alpha alleges that after the noise issues were identified, FPBA provided Alpha with various suggestions, which failed to solve the noise issues. Alpha alleges that as a result, Bilbro terminated Alpha's Subcontract, refusing to pay Alpha $323,352, and refusing to compensate Alpha for additional work done to try to resolve the noise issues. Alpha alleges that it has suffered damages estimated at approximately $1,121,564.57. Based on those allegations, FPBA had knowledge that its actions could cause Alpha injury.

The fifth factor, moral blame, has no application in this case because the relationships involve arm's length transactions and Alpha has not alleged any facts to

support a claim that FPBA acted in bad faith.

In assessing the last factor, policy of preventing future harm, the California Supreme Court has held that "[a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power." *Bily*, 834 P.2d at 765. Alpha is a sophisticated actor and had a responsibility to protect itself. However, in this case, Alpha alleges that it was contracted by Bilbro to use plans and specifications provided by FPBA. Alpha alleges that any of its proposed plans had to be submitted to Bilbro and would receive commentary, changes, and revisions from FPBA. While these allegations do not relieve Alpha of its duty to protect itself, they favor giving less weight to this factor. *See Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*, 119 F. Supp. 3d 1117, 1126 (N.D. Cal. 2015) (giving less weight to the final *Biakanja* factor where the plaintiff relied on the defendant's report on soil conditions and had little time to conduct an independent investigation of the soil conditions).

The Court concludes that Alpha has alleged facts sufficient to find that there was a special relationship between Alpha and FBPA. Alpha was contractually obligated by Bilbro to use FPBA's plans. *See Ratcliff*, 106 Cal. Rptr. 2d at 8 ("Courts sometimes impose a duty to prevent pure economic loss when there is no privity of contract when the injured party is an intended beneficiary of a contract between the defendant and another party."). There is no allegation that Alpha deviated from the FPBA-approved plans. *See State Ready Mix*, 181 Cal. Rptr. 3d at 927 (finding that there was not a special relationship where the plaintiff deviated from the plan approved by the defendant). Alpha has alleged sufficient facts to infer that FPBA owed Alpha a legal duty of care. FPBA's motion to dismiss Alpha's claim for negligence is denied.

**B. Motion to Dismiss Filed by Sparling (ECF No. 59)**

Sparling contends that Alpha cannot state a claim for negligence because Alpha "failed to plead and cannot plead facts" to establish that Sparling owed Alpha a legal duty of care. (ECF No. 59-1). Sparling contends that it was not in contractual privity

1 with Alpha and that there are no facts pled to establish that there was a special
2 relationship between Alpha and Sparling.

3 Alpha contends that there was a "special relationship" between Sparling and
4 Alpha. (ECF No. 73). Alpha contends that Sparling was retained by FPBA to provide
5 acoustic expertise which was passed on to subcontractors, such as Alpha. Alpha
6 contends that Sparling communicated directly with Alpha to prevent and attempt to
7 mitigate noise issues.

8 With regard to the first *Biakanja* factor, Alpha alleges that Sparling was hired by
9 FPBA "to provide guidance and review acoustical issues on the Project." *Id.* ¶ 13. In
10 this case, the Complaint alleges FPBA hired Sparling to propose recommendations on
11 how to address noise issues. Although the Complaint alleges that Sparling contacted
12 Alpha directly, at times, Alpha has not alleged facts to support the inference that
13 Sparling's services, rendered pursuant to its contract with FPBA, were intended to
14 affect Alpha.

15 Under the second *Biakanja* factor, foreseeability of harm, Alpha alleges that
16 "Sparling suggest[ed] several mitigation techniques and FPBA provided drawings," and
17 Alpha alleges that, at times, Sparling communicated directly with Alpha. (ECF No. 45
18 ¶ 23). Alpha alleges that as a result of the various "suggestions" from Bilbro, FPBA,
19 and Sparling, Alpha "purchas[ed] new equipment, remov[ed] prior installations,
20 install[ed] new materials, purchas[ed] additional supplies and . . . remobiliz[ed] its crew
21 at least on four separate occasions . . . ." *Id.* ¶ 27. Alpha has alleged sufficient facts to
22 find that it is foreseeable that Alpha, relying on Sparling's suggestions, could suffer
23 economic injury. However, the alleged facts are not sufficient to infer that it was
24 foreseeable to Sparling that Alpha would act upon Sparling's "suggestions."

25 The third and fourth *Biakanja* factor, certainty of injury and the closeness of the
26 connection between Sparling's conduct and the injury suffered, weigh against imposing
27 a duty of care. Alpha alleges that it submitted all its plans to Bilbro and received
28 "commentary, changes and revisions from Bilbro, FPBA and Sparling." (ECF No. 45

¶ 19). Alpha alleges that Sparling "proposed several recommendations" and "suggest[ed] mitigation techniques" to fix potential noise levels. *Id.* ¶ 23. Alpha alleges that it "regularly received communications from Sparling . . . either directly from Sparling . . . or as a forward by Bilbro." *Id.* ¶ 21. Alpha alleges that "Bilbo [sic], FPBA and Sparling provided Alpha with various suggestions . . . on how to reduce the noise levels in the individual rooms." *Id.* ¶ 27. Alpha alleges that it incurred additional costs implementing these suggestions and the "solutions presented by Bilbro, FPBA and Sparling did not effectively reduce the noise level . . . ." *Id.* ¶ 28. Alpha alleges that ultimately, Bilbro refused to pay Alpha under their contract and refused to compensate Alpha for additional work done to try to resolve the noise issues. Although the Complaint alleges that Sparling gave Alpha "suggestions," there are no facts alleged to support the inference that Alpha would rely on Sparling's suggestions. Alpha's scope of work was to use "plans and specifications by FPBA." *Id.* ¶ 14. Alpha has not alleged sufficient facts to infer that the closeness of the connection between Sparling's conduct and the injury suffered to support a legal duty of care.

The fifth factor, moral blame, has no application in this case because the relationships involve arm's length transaction and Alpha has not alleged any facts to support a claim that Sparling acted in bad faith.

In assessing the last factor, policy of preventing future harm, the California Supreme Court has held that "[a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power." *Bily*, 834 P.2d at 765. Alpha is a sophisticated actor and had a responsibility to protect itself. There are no factual allegations to support an inference that Alpha was required to rely on Sparling's "suggestions" and "recommendations." *See* ECF No. 45 ¶¶ 21, 23, 27.

While it may have been foreseeable that Alpha, relying on Sparling's suggestions, may have suffered economic injury, "[t]he mere presence of a foreseeable risk of injury to third persons" is not "sufficient, standing alone, to impose liability for

negligent conduct." *Bily*, 834 P.2d 745, 762. Alpha has not alleged facts sufficient to find that there was a special relationship between Alpha and Sparling. Sparling was hired by FPBA as an acoustical consultant. Alpha has not alleged facts sufficient to infer that Alpha was the intended beneficiary of the contract between FPBA and Sparling or that Alpha had to implement Sparling's suggestions. *See Ratcliff*, 106 Cal. Rptr. 2d at 8 ("Courts sometimes impose a duty to prevent pure economic loss when there is no privity of contract when the injured party is an intended beneficiary of a contract between the defendant and another party."). Alpha has not alleged sufficient facts to establish that Sparling owed Alpha a legal duty of care. Sparling's motion to dismiss Alpha's claim for negligence is granted.

**V. Conclusion**

IT IS HEREBY ORDERED that the motion to dismiss filed by Ferguson Paper Baldwin Architects, Inc. (ECF No. 56) is denied.

IT IS FURTHER ORDERED that the motion to dismiss filed by Sparling, Inc. (ECF No. 59) is granted.

IT IS FURTHER ORDERED that the request for oral argument filed by Ferguson Pape Baldwin is denied as moot. (ECF No. 72).

DATED: August 26, 2016

**WILLIAM Q. HAYES**
United States District Judge