UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of PENN AIR CONTROL INC., a California corporation,<br><br>v.<br><br>BILBRO CONSTRUCTION COMPANY, INC., a California corporation; and INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation,<br><br>                                       Defendants. | Case No.: 16-cv-003-WQH-NLS<br><br>**ORDER** |
| And Related Counterclaims. | |

HAYES, Judge:

The matter before the Court is the Motion for New Trial or, in the Alternative, Remittitur of the Verdict. (ECF No. 295).

**I.     Background**

In 2012, the Department of the Navy awarded a prime contract to Bilbro Construction Company (Bilbro) to renovate the heating, ventilating, and air conditioning (HVAC) system in Watkins Hall, a building located on the Naval base in Monterey,

1

California.[1]  Bilbro, a general contractor, hired Ferguson Pape Baldwin Architects, Inc. (FPBA) to be the designer of record for the project and to provide architectural designs. FPBA in turn hired Sparling, Inc. (Sparling), an acoustical expert. Bilbro hired Alpha Mechanical (Alpha) as the mechanical contractor, and Alpha subcontracted with Shadpour Consulting Engineers, Inc. (SCE) to design the HVAC system, which Alpha installed.

The Navy imposed strict noise requirements on the project because Watkins Hall contained classrooms. When the new HVAC system was first turned on, 23 of the rooms in Watkins Hall exceeded the Navy's noise limits and the Navy refused to accept the work. Bilbro then hired Sparling directly to assess the noise issue and provide recommendations to bring the HVAC system into compliance with the Navy's noise requirements. Sparling provided a series of recommendations, which Alpha implemented. Sparling's recommendations brought some, but not all of the rooms into compliance. Alpha incurred costs implementing Sparling's recommendations. Alpha deemed the costs incurred implementing Sparling's recommendations "extra," and outside the scope of the original contract between Bilbro and Alpha. Alpha implemented Sparling's recommendations for approximately ten months before formally requesting Bilbro approve a change order that would provide Alpha with additional compensation for the costs associated with implementing Sparling's noise mitigation recommendations. Bilbro declined to approve the change order and on June 3, 2015, Bilbro terminated its contract with Alpha. This litigation followed.

On July 17, 2015, Penn Air Control Inc. (Penn Air), a Bilbro subcontractor, filed a Complaint against Bilbro, alleging breach of contract and seeking payment for work it had done balancing the Watkins Hall HVAC system. (ECF No. 1). On October 19, 2015, Bilbro filed a Counterclaim against Penn Air and Alpha, bringing claims against Alpha for indemnity against Penn Air, declaratory relief, unjust enrichment, and breach of contract.

---

[1] The contract also included renovations of the building's plumbing and electrical systems. Only the HVAC work is at issue in this matter.

(ECF No. 17). Among other things, Bilbro sought damages from Alpha for extra work it performed mitigating the sound issues on the project, including extra field and office overhead and payments made to a contractor hired after Alpha was terminated.

On November 11, 2016, Alpha filed an Amended Counterclaim against Bilbro, FPBA, Sparling, and SCE alleging claims for breach of contract, breach of fiduciary duty, and negligence. (ECF No. 108). Alpha alleged damages of $323,352.00 against Bilbro for failure to pay Alpha "for work performed on the [p]roject." (ECF No. 108 ¶ 50). Alpha alleged damages of $1,121,564.57 against Bilbro, FPBA, and Sparling for "damages, including, but not limited to the cost of having to purchase new equipment, remove prior installations, install new materials, purchase additional supplies and to remobilize its crew at least on four separate occasions during the period of August 2014 through May 2015 . . . ." *Id.* ¶ 65. Alpha also filed a claim for indemnity against SCE pursuant to Alpha's contract with SCE. Alpha sought indemnity from SCE for any liability and expenses incurred defending against Bilbro's counterclaim to the extent the liability was a direct and proximate result of SCE's actions or omissions.

In November 2017, Alpha settled its claim with Sparling and FPBA. Sparling and FPBA did not admit fault but agreed to pay Alpha $385,000. (ECF Nos. 146, 152). Sparling and FPBA were dismissed. (ECF No. 167). In November 2018, Penn Air settled with Bilbro and Alpha and was dismissed. (ECF No. 221).

On February 5, 2019, Bilbro, Alpha, and SCE proceeded to a jury trial. At trial, Alpha voluntarily dismissed its negligence claim and the Court dismissed Alpha's breach of fiduciary duty claim. At trial, Alpha defined the work it performed installing the HVAC system under the original plans provided to it by Sparling, FPBA, and SCE and approved by Bilbro as work performed under the "original" contract. Alpha defined the subsequent work it did implementing Sparling's noise mitigation suggestions as "extra" or "additional work" because it required Alpha to make changes to the HVAC system that were not included in the original plans. Both Alpha and Bilbro sought to recover their contribution

to the Penn Air settlement under their respective breach of contract claims, however, the Court excluded both sides from doing so before submission to the jury.

At trial, Bilbro argued that the noise was caused by SCE's selection of improper HVAC equipment or Alpha's deficient installation of that HVAC equipment. Bilbro argued that under the Subcontract it was Alpha's responsibility to bring the HVAC system into compliance with the project's noise requirements. Bilbro argued that any costs incurred were the responsibility of Alpha, and that Alpha failed to obtain change orders for the additional work it performed implementing Sparling's noise mitigation suggestions.

Alpha and SCE argued that noise compliance was the responsibility of Sparling and FPBA under the Subcontract and not Alpha or SCE. Alpha asserted that it properly installed the HVAC equipment, and that it did not cause the noise issues on the project since it did not design the HVAC system—it merely followed the plans given to it by SCE, Sparling and FPBA, which had been approved by Bilbro. Alpha argued that it should not have to bear the costs of the subsequent changes to the HVAC system recommended by Sparling, which it deemed to be "extra work," since it properly installed the HVAC equipment specified in the original plans.

Evidence at trial showed that the Subcontract provided Alpha would "Design/Build Mechanical, Plumbing, Electrical plus Overall Project Superintendence from plans and specifications by FPBA + [SCE]." (Ex. 4, ECF No. 267 at 1; ECF No. 313-5). The Subcontract incorporated attachments containing more specific details. Alpha relied upon the description of the section of the RFP that defined the HVAC system's static pressure and temperature levels and argued that it did not include the project's noise requirements. Bilbro's project manager, Sandra Greene, testified that the mechanical systems selected by SCE would be based upon the recommendations of the project sound consultant. The project sound consultant was Sparling, an acoustics expert, hired by FPBA during the design phase of the project. Sparling was not hired to consult during the building phase of the project. The jury saw internal Sparling emails detailing mechanical equipment submissions from SCE that went unread after the design phase because Sparling's contract

4

with FPBA had expired. Bilbro subsequently re-hired Sparling directly after the noise issues became apparent. The jury heard evidence that the government criticized Bilbro for not involving an acoustician throughout the entirety of the project. The jury also heard testimony from Bilbro's President, Maryory Contreras, stating that FPBA, a Bilbro subcontractor, was the designer of record on the project, whose responsibility it was "to coordinate the design effort of the entire project . . . to assure consistency of design between design disciplines" and to "coordinate acoustics requirements." (ECF No. 278 at 21, 30). With respect to change orders, the Subcontract between Bilbro and Alpha provided:

> ARTICLE X    CHANGES: Changes will be binding on the Contractor only if such changes are in writing issued from Bilbro Construction Company, Inc. and signed by a Corporate Officer of Bilbro Construction Company, Inc. Contractor may, by written change order, make any change including additions or deletions in quantities or changes to the Specifications or drawings. If any change otherwise reasonably affects the amount due the Subcontractor or the time of performance hereunder, an equitable adjustment shall be made. Upon reasonable notice to the Subcontractor, the Contractor may, by written change order, cancel any Work not then performed without any liability to the Contractor, except that there shall be an equitable adjustment between the parties as to any work or materials then in progress. No such cancellation shall relieve either party of their continuing obligations to any work performed hereunder, Subcontractor must assert any claim for monetary adjustment for said changes or cancellation of work under this Agreement in writing within five (5) days from the date the change or cancellation is ordered.

(Ex. 4, ECF No. 267 at 1; ECF No. 313-5 at 16).

The jury was asked to resolve the following three claims: Bilbro's breach of contract claim against Alpha; Alpha's breach of contract claim against Bilbro; and, if Alpha was found liable to Bilbro, Alpha's claim for indemnity from SCE. The jury was provided instructions, agreed upon by all parties. The relevant instructions for Alpha's breach of contract claim, extra work, and corresponding damages provided:

> INSTRUCTION NO. 28
> BREACH OF CONTRACT (ALPHA against BILBRO)
> Alpha Mechanical brings a claim for breach of contract against Bilbro Construction. To recover damages from Bilbro Construction for breach of

contract, Alpha Mechanical must prove by a preponderance of the evidence all of the following:
1. That Alpha Mechanical and Bilbro Construction entered into a contract;
2. That Alpha Mechanical did all, or substantially all, of the significant things that the contract required it to do;
3. That Bilbro Construction did not pay Alpha Mechanical the money owed by Bilbro Construction to Alpha under the contract and/or for additional work required by Bilbro Construction and performed by Alpha Mechanical to address the noise issues on the project;
4. That Alpha Mechanical was harmed; and
5. That Bilbro Construction's breach of contract was a substantial factor in causing Alpha Mechanical's harm.

INSTRUCTION NO. 29
Bilbro Construction contends that Alpha Mechanical did not perform all of the things that it was required to do under the contract, and therefore Bilbro Construction did not have to perform its obligations under the contract. To overcome this contention, Alpha Mechanical must prove both of the following:
1. That Alpha Mechanical made a good faith effort to comply with the contract; and
2. That Bilbro Construction received essentially what the contract called for.

INSTRUCTION NO. 30
Alpha Mechanical claims that Bilbro Construction required Alpha Mechanical to implement continuing recommendations by Sparling, as Bilbro Construction's agent, to deal with the sound issues on the project and this was beyond what was required by the parties' original contract. Alpha Mechanical claims that it should be compensated for this extra work.
To succeed on this claim, Alpha Mechanical must prove all of the following by a preponderance of the evidence:
1. That the extra work was not included in the original contract;
2. That Bilbro Construction directed Alpha Mechanical to perform the extra work;
3. That Alpha Mechanical performed the extra work; and
4. That Alpha Mechanical was harmed because Bilbro Construction required the extra work.

INSTRUCTION NO. 31
If you decide that Alpha Mechanical has proved its claim against Bilbro Construction for breach of contract, you also must decide how much money

6

will reasonably compensate Alpha Mechanical for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Alpha Mechanical in as good a position as it would have been if Bilbro Construction had performed as promised.

To recover damages for any harm, Alpha Mechanical must prove that when its contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Alpha Mechanical also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Alpha Mechanical claims damages for the unpaid balance of the contract, and the extra work it performed remediating the HVAC system. Penalties and interest should not be included in any damage amount.

(ECF No. 270 at 29–32).

On February 14, 2019, the jury returned a verdict in favor of Alpha. (ECF No. 266). The jury found Bilbro liable for breach of contract and awarded damages to Alpha in the amount of $323,352.00 for failure to pay monies owed to Alpha under the original contract. *Id.* at 3–4. Questions nine and ten of the Special Verdict concerned Alpha's request for compensation for additional work:

> Question 9: Do you find that the breach of the contract by Bilbro Construction Company caused damages to Alpha Mechanical for failure to pay Alpha Mechanical for additional work required by Bilbro Construction and performed by Alpha Mechanical to address the noise issues on the project?
>
> Question 10: What is the amount of damage the breach of the contract by Bilbro Construction Company caused to Alpha Mechanical for failure to pay Alpha Mechanical for additional work required by Bilbro Construction and performed by Alpha Mechanical to address the noise issues on the project?

*Id.* at 4–5. The jury answered "yes" to question nine and $1,128,854.00 to question ten. *Id.*

On April 15, 2019, Bilbro filed a Motion for New Trial or, in the Alternative, Remittitur of the Verdict. (ECF No. 295). On May 6, 2019, Alpha filed an Opposition

(ECF No. 313), which SCE joined (ECF No. 314). On May 13, 2019, Bilbro filed a Reply. (ECF No. 316).

## II. Contentions

Bilbro makes three arguments in support of its motion for new trial. First, Bilbro contends that the jury erroneously awarded Alpha breach of contract damages for additional work related to noise mitigation because Alpha "did not meet its burden to prove it obtained written and authorized change orders from Bilbro to perform the work under the contract." (ECF No. 295-1 at 5). Second, Bilbro contends the jury erroneously concluded that Bilbro breached the contract to pay Alpha because Alpha failed to perform the terms of the contract. Third, Bilbro contends the Court erroneously admitted the settlements from third parties into evidence in violation of Federal Rule of Evidence 408. Bilbro seeks a new trial or, in the alternative, a reduction of the verdict by $1,128,854.00 on the grounds that there was insufficient evidence to support the jury's damages for "additional work." *Id.*

Alpha contends that it was not required to produce evidence of a change order because the Bilbro-Alpha Subcontract provided for an "equitable adjustment" should any change to the Subcontract "reasonably affect[] the amount due." (ECF No. 313 at 17). Alpha asserts that the evidence at trial showed that Bilbro was aware of the additional work Alpha was performing on the project, that Alpha informed Bilbro it would be seeking compensation for the additional work, that Bilbro directed Alpha to perform the additional work, and that Bilbro informed Alpha it would pay Alpha for the additional work. Alpha contends that it did not complete the project to Bilbro's satisfaction because Bilbro terminated the Subcontract before completion and physically prevented Alpha from entering the Navy base. Alpha contends that admission of the prior settlements was proper because Alpha offered the settlement in connection with the damage calculation, not to prove liability. Finally, Alpha contends that the jury's award of $1,128,854.00 was not excessive and was supported by the evidence because Alpha's damages expert testified

that Alpha spent $1,128,854.00 performing additional work mitigating the sound issues on the project.

### III. Legal Standard

Federal Rule of Civil Procedure 59 permits the Court to alter or amend a judgment, or order a new trial. *See* Fed. R. Civ. P. 59(a),(e). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation omitted). The grounds on which such motions have been granted include claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). "[T]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.1990)). With respect to evidentiary rulings, "[a] new trial is only warranted when an erroneous evidentiary ruling substantially prejudiced a party." *Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir. 2008) (quoting *Ruvalcaba v. City of L.A.*, 64 F.3d 1323, 1328 (9th Cir. 1995)).

### IV. Discussion

**A. Damages for Additional Work Under the Subcontract**

The jury determined that Alpha was entitled to prevail on its claim against Bilbro seeking to recover for the work done under the contract and for additional work done required by Bilbro and performed by Alpha to address the noise issues on the project. The determination of the jury was not against the weight of the evidence. The jury found that

as a result of Bilbro's breach, Alpha was entitled to recover $323,352.00 for "monies owed to Alpha Mechanical under the contract." (ECF No. 266 at 4). This amount corresponds to work done by Alpha pursuant to the original plans up until the point when the HVAC unit was switched on and the noise issue was recognized. These damages were supported by evidence at trial. With respect to compensation for Alpha's additional work, the jury was required to find that the extra work was not included in the original contract, that Bilbro directed Alpha to perform the extra work, that Alpha performed the extra work, and that Alpha was harmed because Bilbro required the extra work.

The jury heard Tyler Shelton, an Alpha project manager, testify that Bilbro was notified of the sound issues on the project in the summer of 2014, including in a letter to Sandra Greene on June 5, 2014. Alpha presented meeting minutes and internal Bilbro emails demonstrating that Bilbro management was aware of the noise issue at least as early as August 2014. Shelton testified that Sparling recommended various alterations to the HVAC system to mitigate the sound. Multiple memoranda from Sparling containing noise mitigation recommendations, sent from Sparling to Bilbro and then from Bilbro to Alpha were entered into evidence. Maryory Contreras testified that she was aware that after Bilbro re-hired Sparling, Sparling was recommending additional work to Alpha to mitigate the noise issues. Nick Ortenberg, an Alpha project manager, testified that Alpha was required to, and did, receive approval from the designer of record, FPBA, before implementing Sparling's recommendations. Contreras confirmed that she was aware that Sparling's recommendations were uncertain, and Alpha would have to "basically install it and see what happens." (ECF No. 279 at 11; Ex. 54, ECF No. 267 at 7). Ortenberg testified that in April 2015, Alpha informed Bilbro that it expected to be compensated for the work it performed implementing Sparling's recommendations. Alpha presented evidence of time sheets for noise mitigation work signed by a Bilbro employee. Contreras testified that she was aware that Bilbro did not pay Alpha for any of the "extra work" it performed implementing Sparling's recommendations. (ECF No. 279 at 12, 17, 18). Contreras stated that Alpha requested payment for the "extra work" and that Bilbro responded "[t]hrough

e-mails and conversations saying we will work it out at the end of the project." (ECF No. 279 at 14; Exs. 60, 62, ECF No. 267 at 8–9).

The jury's finding that Bilbro required Alpha to perform additional work on the project implementing Sparling's noise mitigation recommendations and that Alpha performed the work are supported by the evidence. Alpha presented evidence at trial that Bilbro was aware that Alpha was implementing Sparling's recommendations, and required Bilbro to implement the recommendations. The jury heard evidence that Bilbro knew that Alpha was not submitting change orders, and knew that Alpha was not conceding responsibility for the noise issues. Contreras testified that Bilbro informed Alpha that it would work compensation out at the end of the project. The award of damages to Alpha for additional work required by Bilbro Construction and performed by Alpha was supported by the evidence. *See Weeshoff Constr. Co. v. L.A. Cty. Flood Control Dist.*, 152 Cal. Rptr. 19, 24 (Ct. App. 1979) ("If the parties, by their conduct, clearly assent to a change or addition to the contractor's required performance, a written 'change order' requirement may be waived."); *Healy v. Brewster*, 59 Cal. Rptr. 752, 758 (Ct. App. 1967) ("Where the terms of a written contract require that extra work be approved in writing, such provision may be altered or waived by an executed oral modification of the contract."); *Wyman v. Hooker*, 83 P. 79, 81 (Cal. Ct. App. 1905) ("The evidence showed that the extra work on the building was done with the knowledge and consent of defendant and his agent, and that they waived the written stipulation that a separate written estimate of extra work should be submitted, by orally agreeing to and countenancing the work without written estimates. Had it not been for defendant's consent thus given, the work would not have been thus done. He will not now be permitted to repudiate work done in the manner that he consented to, on any ground that it was not done in accordance with a previous written agreement.").[2]

---

[2] Bilbro did not request that the jury be required to separately find waiver on the special verdict form submitted to the jury. Federal Rule of Civil Procedure 49(a)(3) provides in part: "[a] party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury." Fed. R. Civ. P. 49(a)(3).

The jury's finding that Bilbro was liable to Alpha for additional work required by Bilbro and performed by Alpha was not against the weight of the evidence, and allowing the verdict to stand would not result in a miscarriage of justice.

### B. Contention That Alpha Failed to Complete Work Required Under the Subcontract

Bilbro contends that "[b]ecause there is insufficient evidence that Alpha completed the work under the contract, Alpha has not established its contract damages and a new trial is warranted." (ECF No. 295-1 at 11). Specifically, Bilbro asserts that because Alpha did not complete the project "wholly . . . to the satisfaction" of Bilbro, as required by Article XII of the Subcontract, Alpha was not entitled to payment. *Id.* Alpha contends that Bilbro's argument is without merit because Alpha was not able to complete its work on the project because Bilbro terminated Alpha before work was completed. (ECF No. 313 at 22).

The jury heard testimony that Alpha was unable to finish the project because Bilbro terminated the contract with Alpha before the government accepted the project. The jury's finding that Bilbro breached the Subcontract and was liable to Alpha for damages was not against the weight of the evidence.

### C. Evidence at Trial of Third-Party Settlements

Bilbro contends that Alpha "erroneously presented evidence of settlements with third parties to prove the issue of liability as to Bilbro and to prove credits for the purpose of reducing the amount of damages for which Bilbro was found liable" in violation of Federal Rule of Evidence 408. (ECF No. 295-1 at 11). Specifically, Bilbro objects to testimony at trial regarding the Penn Air, Sparling, and FPBA settlements. Bilbro contends that "[t]he Court improperly determined [the Penn Air settlement] was relevant to damages, because the offsets for settlements paid by the other parties could have been addressed after the verdict." (ECF No. 295-1 at 13).

Alpha contends that Bilbro was not prejudiced by testimony regarding the Penn Air settlement because Bilbro was the first party to introduce testimony regarding the Penn Air

12

settlement at trial. Alpha further contends that admittance was proper because Bilbro was seeking reimbursement and indemnity from Alpha for the money it had to pay to Penn Air as Bilbro's damages at trial, and that any prejudice Bilbro may have suffered was cured when the Court ultimately instructed the jury to disregard payments made by the parties to Penn Air. Alpha contends that evidence of the Sparling and FPBA settlements was properly offered without objection for calculating damages.

Under Rule 408, "[e]vidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim." Fed. R. Evid. 408(a)(1). However, "[t]he court may admit this evidence for another purpose . . . ." Fed. R. Evid. 408(b).

The first reference to the Penn Air settlement at trial came during Bilbro's direct examination of Contreras, its own witness. Bilbro waived its Rule 408 objection to the introduction of the Penn Air settlement by introducing the evidence of the Penn Air settlement at trial to the jury. *See Stainton v. Tarantino*, 637 F. Supp. 1051, 1082 (E.D. Pa. 1986) (plaintiffs waived right to object to testimony regarding a settlement conversation after introducing notes from the conversation into evidence); *see also Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1134 (10th Cir. 1991) ("Ms. Torres offered the affidavit to the court, as factfinder, in support of her allegations of impropriety on the part of the law clerk . . .We conclude that Ms. Torres waived any claim to Rule 408 protection by her own submission of the affidavit to the court."); *A.A.B. Joint Venture v. United States*, 77 Fed. Cl. 702, 706 (2007) ("The law is clear that a party offering evidence 'opens the door' and waives its right to object to the entry of that evidence. The immediate effect of introducing evidence is the loss of the right to exclude the evidence or to claim that admitting the evidence was other than harmless error." (citing *United States v. Washington*, 434 F.3d 7, 11 (1st Cir. 2006)).

Limited testimony regarding the amounts paid in the Penn Air settlement was properly admitted because of its relevance to the issue of damages for Bilbro's breach of contract claim. After the negligence and breach of fiduciary claims were dismissed, the Court precluded both sides from requesting their contributions to the Penn Air settlement as damages and struck portions of the testimony of Ms. Contreras and Ms. Xitco that discussed the Penn Air settlement. The jury was instructed to "not consider any testimony concerning settlements paid to Penn Air by Bilbro or Alpha in [their] deliberations." (ECF No. 284 at 85). The Court's evidentiary rulings made based on claims in existence at the time the rulings were made were not erroneous, and any prejudice Bilbro may have suffered by the admission of testimony regarding the Penn Air settlement was cured by the Court's admonition to the jury not to consider the Penn Air settlement during deliberations. Testimony regarding the Sparling and FPBA settlements was properly admitted because it was relevant to determining damages for additional work under Alpha's breach of contract claim.

**D. Evidentiary Support for Jury's $1,128,854.00 Award for Additional Work**

Bilbro contends that the jury's $1,128,854.00 award for additional work is excessive and against the clear weight of the evidence. Bilbro asserts that the jury "accepted Alpha's economist expert Ms. Xitco's testimony that the overhead costs, direct costs for non-noise mitigation, and direct costs for noise mitigation totaled $1,128,854.00, without accepting her interest calculations" and without factoring in the $385,000.00 Alpha received from FPBA and Sparling as an offset. (ECF No. 295-1 at 14). Bilbro contends that Alpha was not eligible to receive compensation for additional work because of the absence of change orders, and asserts that because Alpha also received $385,000.00 in settlements from FPBA and Sparling, it "has been made more than whole." *Id.* at 16.

Alpha does not dispute that in its closing statement Alpha requested $744,000 for additional work. Alpha contends that its statement in closing was not evidence and that the award is not grossly excessive and should stand. (ECF No. 313 at 27).

The Court "will not reverse the jury's assessment of the amount of damages unless the amount is grossly excessive or monstrous . . . or unless the evidence clearly does not support the damage award." *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1216 (9th Cir. 1983) (citing *Siebrand v. Gossnell*, 234 F.2d 81, 94 (9th Cir.1956) then *City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033, 1039 (9th Cir. 1983)).

> When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting an remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.

*Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir.1983) (citing *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65–66 (1966)).

In this case, Alpha's damages expert testified that before interest, Alpha was owed $323,352.00 for the outstanding balance due on the contract, $113,058 for "Penalty Assessed on Outstanding Balance," $359,101 for "Overhead Allocated to Project," $541,928 for "Direct Costs Associated With Noise Mitigation," $227,825 for "Direct Costs Not Associated With Noise Mitigation," $117,752.00 for "Settlement to Penn Air," and stated that the amounts shown should be offset by the $225,000 Alpha received in the FPBA settlement and $160,000 received in the Sparling settlement. (ECF No. 283 at 197). A demonstrative containing a summary of the damage figures testified to by Alpha's damages expert was displayed at trial but was not entered into evidence. The jury was instructed that "[p]enalties and interest should not be included in any damage amount," ECF No. 270 at 32, and that they "should not consider any testimony concerning settlements paid to Penn Air by Bilbro or Alpha in [their] deliberations" (ECF No. 284 at 85). During closing, Alpha's counsel stated:

> So original subcontract -- original subcontract value not paid $323,352. And the remaining balance of the hard costs that Alpha spent is $744,000. If you add these numbers, it is more, but remember we are giving them credit for the amount of money that we received from FPBA and Sparling when they settled

this case.

(ECF No. 284 at 135).

The jury's award of $323,352 for breach of contract is the figure provided by Alpha's damages expert for "Outstanding Balance Due" under the Subcontract. The jury's award of $1,128,854.00 for additional work is more than the $744,000 Alpha's counsel requested at closing and is equal to the sum of three figures provided by Alpha's damages expert: $359,101 for "Overhead Allocated to Project," $541,928 for "Direct Costs Associated With Noise Mitigation," and $227,825 for "Direct Costs Not Associated With Noise Mitigation." Pursuant to the Court's instruction, the jury disregarded penalties assessed on outstanding balance, interest, and the settlement paid to Penn Air. The jury's award did not factor in offsets for the $160,000 Sparling and $225,000 FPBA settlements. Alpha's expert testified that the damages must be offset by the $225,000 Alpha received in the FPBA settlement and $160,000 received in the Sparling settlement. Left undisturbed, the jury's award for additional work would result in Alpha receiving an award in excess of damages proved by Alpha at trial. Viewing the evidence in the light most favorable to Alpha, the maximum award that can be sustained by the evidence at trial for additional work performed by Alpha after consideration of the FPBA and Sparling settlements is $744,000. *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) ("A remittitur must reflect the maximum amount sustainable by the proof.") (internal quotation marks omitted).

Accordingly, the Court finds that a remittitur is appropriate and the Motion for New Trial (ECF No. 295) is denied on the condition that Alpha accept a reduced damage award of $744,000 for additional work required by Bilbro and performed by Alpha to address noise issues on the project.

## V. Conclusion

IT IS HEREBY ORDERED that the Motion for New Trial (ECF No. 295) is denied on the condition that Alpha accept a reduced judgment of $1,067,352.00.[3] If Alpha declines to accept the remittitur, the Court will grant a new trial on the issue of damages for additional work required by Bilbro and performed by Alpha on the project. Alpha shall inform the Court of its decision to accept or reject the remittitur no later than fourteen days from the date of this Order.

Dated: September 12, 2019

Hon. William Q. Hayes
United States District Court

---

[3] $323,352.00 + $744,000.00